[Cite as *In re K.G.*, 2026-Ohio-3079.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

In re K.G.                                    Court of Appeals No.  {72}S-25-027

                                              Trial Court No.  22520067

                                              **<u>DECISION AND JUDGMENT</u>**

                                              Decided:  August 11, 2026

*  *  *  *  *

Henry Schaefer, for appellant.

Beth A. Tischler, Sandusky County  Prosecuting Attorney, and
Emily A. Witter, Assistant Prosecuting Attorney, for appellee.

*  *  *  *  *

**ZMUDA, J.**

## I.  Introduction

{¶ 1} This is an appeal of the judgement of the Sandusky County Court of

Common Pleas, Juvenile Division, adjudicating appellant, K.G., delinquent and placing

K.G. on community control until further order of the court. Finding no error, we affirm.

## II.  Facts and Procedural Background

{¶ 2} This is a criminal appeal from the Sandusky County Court of Common

Pleas, Juvenile Division.  After K.G. was taken into custody on unrelated theft charges on

March 7, 2025, the State charged her with illegal conveyance of drugs in violation of R.C. 2921.36(A)(2), a felony of the third degree; and possession of marijuana in violation of R.C. 2925.11(C)(3)(a), a minor misdemeanor.

{¶ 3} The charges arose from an incident occurring on March 7, 2024. On that date, Sandusky County Sheriff's Deputy Noah Deanda arrested K.G. for an unrelated theft offense, and transported K.G. to the Sandusky County Juvenile Detention Center ("JDC"). At the time of arrest, Deanda searched K.G.'s pockets and asked her if she had anything on her, prior to transport to the JDC. K.G. told Deanda that she had nothing and Deanda did not find anything during his pat down. Deanda transported K.G. to the communications center for finger printing then took her to the JDC. After Deanda left, corrections staff called Deanda back to the JDC to retrieve an item of K.G.'s property, a bag containing a green leafy substance. Deanda did not enter the secure portion of the JDC and did not see the substance being taken from K.G. Deanda identified the substance as marijuana based on the appearance and odor, and booked it into evidence. Deanda chose not to have the substance lab-tested.

{¶ 4} At K.G.'s initial appearance, the juvenile court appointed counsel, and the matter proceeded to an adjudication hearing on June 6, 2025. At the hearing, the State presented the testimony of Deputy Deanda, the arresting officer; Sarah Lewis, the Director of the JDC, and Sergeant Courtney Autry, the corrections officer who discovered the marijuana.

2.

**{¶ 5}** First, Deputy Deanda testified that he has been employed with the Sandusky County Sheriff's Office since 2021, with the last two years in the road patrol division. Over the course of his training, Deanda received training in identifying marijuana.

**{¶ 6}** On the night of March 6, 2025, Deanda responded to a church on West Cole Road for a reported theft. Deanda met the victim and a witness at the church, and they identified K.G. and stated that K.G. asked to borrow the victim's phone and air-pods during mass and then promptly left without returning them. Deanda found K.G.'s address and met K.G.'s guardian at the home. K.G.'s guardian told Deanda that it was a common occurrence for K.G. to be missing, requiring the Fremont police to look for her. Deanda eventually found K.G. and another deputy found the missing property, resulting in K.G.'s arrest.

**{¶ 7}** Deanda described the search of K.G. He testified that he asked K.G.to come to his cruiser, patted-down K.G.'s pockets and asked if she "had anything on [her]." Deanda explained the minimal search, saying. "With any female, when it comes to the pat down, you have to do taps. You ask them: Do you have anything on you, et cetera, et cetera." K.G. said she had nothing. He then transported K.G. to the communications center for fingerprinting, without performing another search. After delivering K.G. to the detention center, Deanda returned to the police station and began his paperwork.

**{¶ 8}** As Deanda completed the paperwork, JDC staff called and asked him to return. Deanda entered the main door of the JDC and a corrections officer met him there to deliver a bag that was discovered on top of K.G.'s clothing in the shower area. Deanda described the substance inside the bag, stating, "The item, what it appeared to be was a

3.

green leafy substance that had the similar smell of marijuana that was inside of a plastic bag at the time." The deputy testified that, based on his training and experience, he knew the substance was marijuana saying, "it had the odor of raw marijuana." Deanda logged the bag containing marijuana as evidence, and at the hearing, he identified the exhibit proffered as a State's exhibit as the same bag and marijuana he recovered from the JDC.

{¶ 9} On cross-examination, Deanda admitted that he did not recover the marijuana from K.G. but was handed the bag by the corrections officer at the JDC, and the officer told Deanda it was taken from K.G. Deanda also acknowledged that he did not send the marijuana for testing or record its weight. Deanda testified, however, that he was familiar with marijuana and had training in identifying the drug by odor, and he estimated there was a couple of grams of marijuana in the bag. He explained, "now that [marijuana is] legal, I don't really see the need to have it [tested]."

{¶ 10} Next, Sarah Lewis testified. Lewis is the Director of the Sandusky County JDC facility. Lewis explained that the JDC is a detention facility for youth, and she described the procedure staff follow when an alleged illegal substance is found on a detainee. She testified that the JDC has 96 cameras that observe the facility. Although Lewis was not present on the date of the March 7 incident involving K.G., Lewis was notified of the incident, and she reviewed the security video and the employee statements and reports concerning the incident. She testified to the authenticity of the flash drive containing video of the detention process for K.G.

{¶ 11} Finally, Sergeant Courtney Autry testified regarding the intake process. Autry oversaw intake at the time that K.G. was brought into the JDC. Autry testified that

4.

during the intake process K.G. fidgeted with her shirt and leaned in one direction. Autry described her interaction with K.G. as the State played a video of K.G.'s intake, indicating that Autry asked K.G. why she was sitting sideways. Autry also noticed that K.G. kept "messing with her shirt."

{¶ 12} Autry also described the pat down process for juvenile females as the following:

> We'll start like searching the collar of the shirt, and if they have any sleeves, we'll pat down the sleeves and the cuffs then the sides. And if they have a bra on, we'll go underneath the bra and the pant line and then search the leg, leg. I- I usually do the calf of the leg also and then their groin.

Autry further testified that they she would pull out the undergarments and "just shake it around." Autry also had detainees perform a "squat and cough" followed by a shower.

{¶ 13} Autry took K.G. through the shower intake process, and she noticed a baggie on top of K.G.'s clothing, after K.G. disrobed. There were no other juveniles in the shower area with K.G., and Autry testified that the area is searched before and after each detainee uses the room. Autry asked K.G. what the baggie was for and she replied that she did not know. Autry then instructed K.G. to continue with her shower and ordered another officer to remove the baggie. Autry testified that the baggie smelled "like a skunk." Autry was not trained in substance identification. She described the baggie as the size of "like a sandwich baggie" and testified that she personally knew what marijuana was and that she believed the substance was marijuana. The State then played the portion of the security video that showed K.G. enter the bathroom and disrobe, followed by Autry noticing the bag of marijuana and asking K.G. about it, and

5.

concluding with Autry removing the bag and handing it off to another officer to deliver to Deanda, the arresting officer.

{¶ 14} On cross-examination, Autry acknowledged that the intake process was lengthy, and detainees normally fidget during the process. However, Autry also testified that K.G.'s fidgeting was "more than normal." Autry also admitted that the bag of marijuana was not inside K.G.'s clothes but was sitting on top of the clothes.

{¶ 15} At the close of testimony, the parties gave closing argument. The State argued that the video and testimony demonstrated that K.G. conveyed marijuana into the JDC, concealed in her bra. The video showed K.G. "messing with her bra and turning away from staff members," demonstrating her knowledge of the marijuana, which was discovered during the shower portion of the intake process.

{¶ 16} K.G.'s trial counsel argued that the evidence did not demonstrate that K.G. had any intent to convey the marijuana into the JDC, because she was under arrest and had no choice in entering the JDC. K.G.'s counsel argued that the illegal conveyance statute is meant to target visitors who attempt to smuggle contraband to a detainee, and not to criminalize substances found on the detainee's person during the intake process. Additionally, K.G.'s trial counsel argued that the State never tested the marijuana, so had no evidence that it was, in fact, marijuana.

{¶ 17} Following the hearing, the court found K.G. delinquent on both counts, illegal conveyance and possession of marijuana, and set the matter for dispositional hearing on July 21, 2025.

6.

{¶ 18} At the dispositional hearing on July 21, 2025, the juvenile court ordered K.G. committed to custody of the juvenile justice center for up to 90 days, with credit for 25 days, and terminated K.G.'s community control in a previous case. The court stayed the balance of days and placed K.G. on community control until further order of the court, not to exceed the attainment of 21 years of age. On July 22, 2025, the juvenile court adopted the magistrate's decision and judgment entry.

{¶ 19} K.G. perfected a timely appeal of the judgment.

### III.  Assignment of Error

{¶ 20} On appeal, K.G. raises a single assignment of error:

> The adjudication of delinquency for illegal conveyance of a drug of abuse onto the grounds of a detention facility in violation of R.C. 2921.36(A)(2), a felony of the third degree if committed by an adult, is based on insufficient evidence because the State failed to prove beyond a reasonable doubt that K.G. acted "knowingly," and because there was not sufficient evidence that the substance was a drug of abuse.

### IV.  Analysis

{¶ 21} K.G. challenges only her conviction for illegal conveyance. She argues that the evidence of "knowingly" was insufficient to sustain her conviction for illegal conveyance in violation of R.C. 2921.36(A)(2). Additionally, K.G. argues that there was insufficient evidence to demonstrate the substance found was marijuana, a drug of abuse.

{¶ 22} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the

7.

essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212 (1978). "Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law." *State v. Richardson*, 2016-Ohio-8448, ¶ 13. Naturally, this requires "a review of the elements of the charged offense and a review of the State's evidence." *Id*.

{¶ 23} K.G. does not dispute that marijuana is a "drug of abuse" as defined by R.C. 3719.01 and 3719.011. Instead, K.G. argues that the State presented insufficient evidence to demonstrate she knowingly conveyed marijuana into the JDC. Although K.G. asserts a single assignment of error, she challenges the evidence as to two elements of the offense of illegal conveyance of drugs of abuse: proof that she "knowingly" committed the offense and proof that the substance seized was marijuana, absent scientific testing. We address each element in turn.

A. **"Knowingly" requirement**

{¶ 24} R.C. 2921.36(A)(2) provides "No person shall knowingly convey, or attempt to convey, onto the grounds of a detention facility … any drugs of abuse as defined in section 3719.011 of the Revised Code[.]" A "detention facility" includes a juvenile detention center such as the JDC in this case. *See* R.C. 2921.01(F).

{¶ 25} The culpable mental state of "knowingly" is defined in R.C. 2901.22(B): "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain

8.

nature." Thus, the State was required to prove beyond a reasonable doubt that K.G. was aware that her conduct would probably result in conveying a drug of abuse onto the grounds of the JDC, by presenting evidence that could include "doing the act itself." *State v. Heade*, 2015-Ohio-2415, ¶ 17 (5th Dist.), citing *State v. Johnson,* 56 Ohio St.3d 35, 38 (1978) (additional citations omitted.).

{¶ 26} K.G. argues that the lack of warnings about the consequences of conveying the drugs into the facility means that she did not "knowingly" convey them. While K.G. was asked if she "had anything" on her, K.G. was never warned of the potential legal implications or additional charges that would result from conveyance of a drug of abuse into the detention center. Such "warning," however, is not required because knowledge of the law is not an element of the offense.

{¶ 27} The "knowingly" element refers to the conduct of bringing the drug into the JDC, and not knowledge of the potential criminal offense. "If the General Assembly intends for the additional elements to carry their own mens rea, it must say so. Otherwise, no culpable mental state need be proved for those elements." *State v. Johnson,* 2010-Ohio-6301, ¶ 37-38. In other words, while K.G. entered the JDC in custody, not by choice, she did so with knowledge she had drugs rather than respond honestly when asked if she "had anything." *See State v. Craig,* 2025-Ohio-4571, ¶ 37 (6th Dist.), citing *State v. Cargile,* 2009-Ohio-4939, ¶ 13; *see also State v. Williams,* 94 Ohio App. 249, 252 (6th Dist.1952) ("ignorance of the law [is] no defense for a violation of law"). R.C. 2921.36(A)(2) only requires proof of knowingly conveying drugs, with no mens rea specified for any other element.

9.

{¶ 28} Therefore, contrary to K.G.'s argument, the State was not required to present evidence of K.G.'s specific intent to violate the law to sustain the conviction for illegal conveyance. The State presented evidence demonstrating K.G. had knowledge she was concealing marijuana. Autry's testimony indicated that K.G. shifted and fidgeted in such a way to suggest that K.G. had an object concealed under her shirt, creating discomfort, demonstrating both knowledge of the presence of the marijuana and a purpose to conceal the marijuana. The juvenile court, as trier of fact, could construe this as evidence of K.G.'s knowing concealment of contraband.

{¶ 29} Deanda, moreover, testified that the substance was marijuana, it was discovered on top of K.G.'s clothing, and the marijuana could only belong to K.G. The shower area where the clothes were discovered was examined immediately prior to K.G.'s use of the shower area, and K.G. was the only inmate in the area when the marijuana appeared on top of K.G.'s clothing. The fact that only K.G. was in the room was evidence demonstrating K.G.'s possession of the marijuana, placed on the clothes. Thus, there was sufficient evidence to support the element of "knowingly," and K.G.'s first argument in support of her assignment of error lacks merit.

**B. <u>Drug of abuse requirement</u>**

{¶ 30} K.G.'s second argument addresses the evidence to support that the substance in the bag was marijuana. K.G. argues that, because the State did not introduce any scientific testing to confirm that fact, the State presented insufficient evidence on this element. While a suspected controlled substance is generally laboratory tested, with the test results introduced as evidence at trial, "a drug may also be identified

10.

circumstantially," through the testimony of a witness having specific knowledge. *Matter of Damon R.,* 1997 WL 90615, *3 (6th Dist.Feb. 28, 1997), quoting *State v. Maupin,* 42 Ohio St.2d 473, 478 (1975); *see also State v. McKee,* 91 Ohio St.3d 292, 295 (2001).

{¶ 31} Under R.C. 3719.011, "drug of abuse" is defined as "any controlled substance as defined in section 3719.01 of the Revised Code." R.C. 3719.01(C) defines "controlled substance" as "a drug, compound, mixture, preparation, or substance included in schedule I, II, III, IV, or V", and additionally defines marijuana as "all parts of a plant of the genus cannabis, whether growing or not[.]" R.C. 3719.01(M). In this case, the State questioned Deanda regarding his training and experience identifying raw and burnt marijuana, and Deanda testified that the substance was raw marijuana, based on that training and experience.

{¶ 32} As to the necessity for scientific testing, Ohio law is well-settled. A trained police officer may testify, with the proper foundation, that a substance was marijuana based on experience, training, and the knowledge of the odor of the drug. *Maupin,* 42 Ohio St.2d at paragraph two of the syllabus. With the proper foundation demonstrating knowledge and experience, a lay witness may also testify about the identity of a drug. *McKee* at 295. During Deanda's testimony, he testified that he had been trained in drug identification, was familiar with the odor of both raw and burnt marijuana, and that the substance that was found on top of K.G.'s clothes was raw marijuana, based on that training. Furthermore, Autry testified that she had personal knowledge of marijuana, and the substance discovered was marijuana.

11.

{¶ 33} While limiting her challenge to sufficiency of this evidence, K.G. argues that Deanda's testimony was insufficient to identify marijuana as the substance found with her clothing, citing to *State v Gray,* 2025-Ohio-4607 (1st Dist.). In *Gray,* the First District Court of Appeals considered whether the odor of marijuana established probable cause to search a vehicle, based on recent legalization of marijuana. *Gray* at ¶ 45-46. K.G.'s case does not involve probable cause for a search, however. Therefore, *Gray* is distinguishable from the facts of K.G.'s case.

{¶ 34} K.G. argues insufficient evidence establishing the substance conveyed into the JDC was marijuana, based on the probable cause standard for a search and seizure of the drug. The facts, however, demonstrate K.G. concealed the drug in her clothes and conveyed it into the JDC, only to have it seized after she disrobed as part of the intake process. K.G.'s argument, therefore, does not concern the absence of evidence of marijuana, but challenges the ability of Deanda and Autry to identify the substance as marijuana, necessary to sustain her adjudication for illegal conveyance under R.C. 2921.36(A)(2).

{¶ 35} In a sufficiency challenge, our review is limited to determining whether the evidence, if believed, is legally sufficient or adequate to sustain the adjudication. *Thompkins,* 78 Ohio St.3d at 387. Considering the record in this case, we find sufficient evidence as to the knowing conveyance of marijuana, with sufficient testimony to establish the substance seized from K.G.'s clothing was marijuana.

{¶ 36} Accordingly, we find K.G.'s single assignment of error not well-taken.

12.

## V. Conclusion

**{¶ 37}** For the foregoing reasons, we affirm the judgment of the Sandusky County Juvenile Court.  K.G. is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.

Thomas J. Osowik, P.J.
_____        _____
                                                                              JUDGE

Gene A. Zmuda, J.
_____        _____
                                                                              JUDGE

Charles E. Sulek, J.
_____        _____
CONCUR.                                                              JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.